UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| G SIX CONSULTING LLC, | § § § | |
| Plaintiff, | § § | Case No: 1:25-cv-2166 |
| v. | § § | |
| STEPHEN MULLETT, | § § § | |
| Defendant. | § | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT STEPHEN MULLETT'S MOTION TO DISQUALIFY**

Plaintiff, G Six Consulting, LLC ("G Six" or "Plaintiff"), by and through undersigned counsel, hereby submits this Memorandum of Law in Opposition to Defendant Stephen Mullet's Motion to Disqualify, and in support thereof, states as follows:

**I.        INTRODUCTION**

To distract from its own widely reported failures and misconduct as a franchisor,[1] Defendant Mullett's former employer, Dickey's Barbecue Restaurants, Inc.'s ("Dickey's"), litigation strategy in other pending proceedings so far has consisted of concealing its fraudulent misconduct by refusing to produce ANY of its officers, employees or agents for deposition, including Defendant Stephen Mullett ("Mullett").[2] After it was sanctioned for its litigation

---

[1] *See* Brett Anderson, *They Bet Their Future on Barbecue Dreams. Many Lost Everything.*, NEW YORK TIMES (June 3, 2025), https://www.nytimes.com/2025/06/03/dining/dickeys-barbecue-pit-franchise.html; *see also* Letter from Senator Catherine Cortez Masto, U.S. Senator, to Chris Pilkerton, Acting Adm'r of the U.S. Small Bus. Admin. (May 21, 2019); Jonathan Maze, U.S. Senator Scrutinizing Federal Loans to Subway, Dickey's Franchisees, RESTAURANT BUSINESS (May 23, 2019), https://www.restaurantbusinessonline.com/financing/us-senator-scrutinizing-federal-loans-subway-dickeys-franchisees. A copy of the New York Times article and Senator Cortez Masto's article, along with accompanying letter, is annexed hereto as **Exhibits "A"** and **"B,"** respectively.

[2] Dickey's and Defendant Mullett are both represented by Michael Hurst, Esq., Mary Nix, Esq. and Jamie Drillette, Esq. from the law firm of Lynn Pinker Hurst & Schwegmann out of Dallas, Texas.

ZARCO EINHORN SALKOWSKI
ONE BISCAYNE TOWER, 2 S. BISCAYNE BLVD., 34TH FLOOR, MIAMI, FLORIDA 33131 (305) 374-5418 FAX (305) 374-5428

misconduct in the arbitration that G Six had filed against Dickey's styled *G Six Consulting, LLC vs. Dickey's Barbecue Restaurants, Inc.*, AAA Case No. Case No. 01-23-0004-5053,[3] Dickey's proceeded to file a frivolous lawsuit against Arbitrator Gary Leydig and the American Arbitration Association ("AAA"). *See Dickey's Barbecue Restaurants, Inc., et al. vs. American Arbitration Association, et al.*, Civil Action No.: 3:25-CV-00789-B (N.D. Tex. Apr. 1, 2025). That lawsuit went nowhere and ultimately was dismissed by Dickey's. Mullett, represented by the same counsel as Dickey's, now resorts to attacking the law firm of Zarco Einhorn & Salkowski, P.A. (the "Zarco Firm") which has had most success in seeking to hold Dickey's accountable for its blatant fraud. The instant Motion to Disqualify Counsel ("Motion to Disqualify") is as meritless as Dickey's and Mullett's other litigation tactics described above. Indeed, this same Motion was recently filed by Dickey's in the arbitration styled *Christopher Bruno vs. Dickey's Barbecue Restaurants, Inc.*, AAA Case No. 01-23-0004-5005 and denied by the Arbitrator on July 24, 2025, for lack of jurisdiction. As set forth herein, Mullett's Motion to Disqualify must be denied as baseless and frivolous.

## II. FACTUAL BASIS OF MOTION

Mullett is a former Senior Director of Finance and Real Estate Development for Dickey's. Mullett was at the forefront of Dickey's fraudulent franchise selling scheme. He provided fraudulent financial performance representations to G Six, a former Dickey's franchisee, Christopher Bruno ("Bruno"), another former franchisee that is currently represented by the undersigned attorneys, and numerous other franchisees, as well as to the banks that provided financing to the franchisees. Mullet refused to appear for deposition in the *G Six* arbitration or

---

[3] A copy of the Order entered by Arbitrator Leydig on March 26, 2025 on G Six's Motion for Sanctions in *G Six Consulting, LLC vs. Dickey's Barbecue Restaurants, Inc.*, AAA Case No. 01-23-0004-5053, is annexed hereto as **Exhibit "C."**

provide any information about his franchise sales activities for Dickey's. As such, this separate lawsuit now remains pending against him.

On April 11, 2025, Bruno called Mullett seeking to gain his cooperation with his pending arbitration proceeding. Mullett refused to provide any information to Bruno. In short, the call went nowhere. No third parties participated in the call. There is zero evidence that the Zarco Firm ever attempted to contact Mullett directly or indirectly after the Illinois lawsuit was filed or that the Zarco Firm was even remotely involved in the call between Bruno and Mullett.

**III.     NO BASIS EXISTS TO DISQUALIFY THE ZARCO FIRM**

It is clear that the Motion to Disqualify is baseless and must be denied. There is simply no evidence that demonstrates any violation of Rules 4.2 or 8.4 of the American Bar Association Model Rules of Professional Conduct (the "Rules"), i.e., that any attorney from the Zarco Firm directly or indirectly communicated with Mullet or knowingly assisted or induced Bruno to contact Mullet. Mullett repeatedly cites the same portions of the transcript from his conversation with Bruno; however, Mullett fails to, nor can he, provide any evidence of any communications between attorneys from the Zarco Firm and Bruno establishing that the Zarco Firm directly or indirectly communicated with Mullet through Bruno or induced Bruno to contact Mullett about the representation. Absent any direct evidence of any alleged misconduct, disqualification of counsel is inappropriate.

Similarly, Mullett's claim that the Zarco Firm violated Rule 3.7 is without merit. Robert Zarco, Esq. ("Mr. Zarco") is not a necessary fact witness regarding any of the issues in this case. Aside from Mullett, as well as Dickey's anger, at the Zarco Firm for vigorously prosecuting cases against Dickey's and shining the light on its illegal franchise sales practices both directly and through Mullett, there is no evidence whatsoever that Mr. Zarco, much less any attorney at the

Zarco Firm, possesses any testimony relevant to any disputed issue of fact framed by the pleadings in this matter. Indeed, the information about Dickey's store closures, profitability or systemwide issues can be obtained through objective sources such as Dickey's own business records, public financials, franchise disclosure documents (FDDs), or third-party testimony from current or former franchisees. No testimony from Mr. Zarco is necessary or needed to determine Dickey's astronomical closure rate, as reflected in its own FDDs, and the ongoing investigation by the Federal Trade Commission regarding Dickey's fraudulent practices. At the end of the day, the standard under Rule 3.7 is not whether an attorney could testify, but whether the attorney's testimony is necessary and unavailable from other sources. Mullett cannot meet such a high standard here.

Fundamentally, the Motion to Disqualify is nothing more than a frivolous litigation tactic by Mullett and his counsel to attempt to distract from Dickey's horrible practices as a franchisor. Mullett, as well as Dickey's, have demonstrated a consistent pattern of improper gamesmanship throughout their litigation history and now desperately seek to deprive G Six of his chosen and experienced franchise counsel. The nature of the Motion to Disqualify confirms Mullett's strategic purpose to distract from the merits of the underlying case, delay resolution, and interfere with the Zarco Firm's ability to represent franchisees in their respective disputes with Dickey's and take the depositions of Dickey's current and former representatives, such as Mullett.

As fully stated herein, this Court should deny Mullett's Motion to Disqualify Counsel.

IV. **LEGAL ARGUMENT**

    A. **The Zarco Firm Did Not Violate Either Rule 4.2 or 8.4 as the Underlying Communication was Between Represented Parties Without Attorney Overreach**.

Mullett argues that the Zarco Firm violated Rules 4.2 and 8.4 by using "Bruno to initiate a prohibited substantive contact with Mullett, a represented party." *See* Motion to Disqualify, p. 11. Mullett's position is defective as it is based on the false premise that the Zarco Firm solicited a communication with Mullett and that any substantive conduct with Mullett actually took place.

Under Rule 4.2 of the Rules, a "lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order." *See* Model Rules of Pro. Conduct 4.2. Comment 4 to Rule 4.2 clarifies that parties to a matter may communicate directly with each other, and a lawyer is **not prohibited** from advising a client concerning a communication that the client is legally entitled to make. *See* Model Rules of Pro. Conduct 4.2 cmt. 4. This distinction is critical in determining whether a lawyer's conduct violates the rule.

In its Formal Opinion No. 11-461 (Aug. 4, 2011), the American Bar Association concluded that it can be ethically permissible for a lawyer representing one party to a dispute to advise the lawyer's own client to communicate directly with the opposing party. *See* ABA Formal Op. 11-461 (Aug. 4, 2011). In Formal Opinion No. 11-461, the ABA concluded that it is permissible for a lawyer to give "substantial assistance to a client regarding a substantive communication with a represented adversary," including "the subjects or topics to be addressed, issues to be raised and strategies to be used." Moreover, the ABA stated "advice may be given regardless of who—the lawyer or the client—conceives of the idea of having the communication." ABA Formal Op. 11-

461 (Aug. 4, 2011). Even several bar ethics committees have concluded that it is not a violation of professional conduct rules for lawyers to suggest or recommend that the client communicate directly with a represented person.[4]

Notably, it is permissible to advise a client to communicate with a represented party so long as the lawyer does not direct or script the communication in a way that would make the client the lawyer's agent for purposes of the rule. *See* California Comm. on Prof'l Resp. and Conduct Formal Op. 1993-131 ("An attorney is also prohibited from scripting the questions to be asked or statements to be made in the communications or otherwise using the client as a conduit for conveying to the represented opposing party words or thoughts originating with the attorney").[5]

Here, Mullett's accusation of "witness tampering" is not only baseless, but a deliberate mischaracterization of the facts. *See* Motion to Disqualify, p. 4. As a threshold matter, there is no prohibition for Bruno and Mullet to directly discuss the underlying dispute between the parties on their own volition as it is permitted under the ethics rules. In other words, Rule 4.2 does not prohibit a represented party from communicating directly with another represented party. *See Holdren v. General Motors Corp.*, 13 F.Supp.2d 1192, 1195 (D. Kan. 1998) ("[T]here is nothing in the disciplinary rules which restrict a client's right to act independently in initiating communications with the other side, or which requires that lawyers prevent or attempt to

---

[4] *See, e.g.*, Oregon Eth. Op. 1997-147 (1997) (Direct Communication Between Represented Parties) ("Allowing the parties themselves to discuss the issues and possible avenues for settlement does not conflict with the policy behind the rule [prohibiting a lawyer from causing another to communicate on the subject of the representation]." ); California Comm. on Prof'l Resp. and Conduct Formal Op. 1993-131 (1993) (lawyer may confer with client as to strategy to be pursued in, goals to be achieved by, and general nature of communication client intends to initiate with opposing party as long as communication itself originates with, and is directed by, client and not the lawyer); San Francisco Bar Assoc. Informal Op. 1985-1 (1985) (lawyer may allow or encourage his client to attempt to resolve dispute by communicating directly with opposing party, so long as client is not directly or indirectly acting as agent of lawyer).

[5] Rule 4.2 of the ABA Model Rules of Professional Conduct mirrors Rule 4.2(a) of the California Rules of Professional Conduct. As such, California's interpretation of Rule 4.2 is highly persuasive.

discourage such conduct.") (citing New York City Bar Association Formal Opinion No.1991-2, at 5-6)); *Dorsey v. Home Depot U.S.A., Inc.*, 271 F.Supp.2d 726, 730 (D. Md. 2003) ("Nothing in the law prohibits litigants or potential litigants from speaking among and between themselves, as opposed to attorneys for such parties attempting direct communications with represented parties"); *Northwest Bypass v. U.S. Army Corps of Engineers*, 488 F.Supp.2d 22, 28-29 (D. N.H. 2007) (not improper for represented party to communicate directly with represented opponent).

Indeed, there is no evidence whatsoever that any attorney from the Zarco Firm communicated with Mullet through Bruno or induced Bruno to contact Mullet to obtain information from Mullett regarding the representation. Further, Mullett's own version of the subject conversation confirms that no substantive communication even took place between Bruno and Mullett. Bruno's effort to seek cooperation from Mullett is absolutely permitted under Rule 4.2 as it was not under the direction of the Zarco Firm. Indeed, the Zarco Firm did not communicate with Mullet through Bruno and any conversation between the Zarco Firm and Bruno falls within the bounds of Rule 4.2. *See* Model Rules of Pro. Conduct 4.2 cmt. 4 (holding that Rule 4.2 allows parties to a matter to communicate directly with each other, and a lawyer is not prohibited from advising a client concerning a communication that the client is legally entitled to make).

Mullett's Motion to Disqualify is fundamentally flawed as there is a complete absence of any evidence reflecting that attorneys at the Zarco Firm communicated with Mullet or did so through Bruno to discuss the merits of the dispute with Dickey's. Absent evidence from Mullett that attorneys at the Zarco Firm "communicate[d] … with a person … the lawyer knows to be represented by another lawyer," *see* Rule 4.2, or that the Zarco Firm did so indirectly through Bruno, Mullett's Motion to Disqualify falls flat.

Second, Mullett argues in conclusory fashion that the Zarco Firm also violated Rule 8.4(a).

Mullett's argument is, once again, fundamentally flawed because for there to be a violation of Rule 8.4, there needs to be either an attempt to violate another rule or the violation of another rule. *See* Model Rules of Pro. Conduct 8.4 (It is professional misconduct for a lawyer to "violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another."). Moreover, Rule 8.4(a) "does not prohibit a lawyer from advising a client concerning action the client is legally entitled to take." *See* Model Rules of Pro. Conduct 8.4 cmt. 1.

Here, Mullett cherry-picks isolated phrases from his conversation with Bruno to create the illusion that the Zarco Firm violated the Rules to leverage the instant litigation (*to which Bruno is not even a party*) in exchange for favorable testimony. *See* Motion to Disqualify, pp. 13-14. The transcript provided by Mullett contains no such statement nor does Mullett provide any other evidence in support of his specious argument. Notably, absent surreptitiously eavesdropping privileged conversations between attorneys at the Zarco Firm and Bruno, Mullett cannot legitimately claim that the Zarco Firm knowingly assisted or induced Bruno to violate or attempt to violate any of the Rules. Mullett merely offers evidence that he and Bruno had a conversation—which Bruno is entitled to do under the Rules. Considering the full scope of the conversation between Bruno and Mullett, it is abundantly clear that Bruno contacted Mullett on his own explaining that "I told them when I worked with you, I thought you were a straight up guy," and "You always helped me." *See* Motion to Disqualify, Exhibit A, 6:16-18. Mullett latches onto the ambiguous phrase, "They said, give it a shot," and spins it into an unfounded narrative of misconduct from this single remark. Mullett's fabricated story cannot serve as the basis for an ethics violation in the absence of clear evidence demonstrating more than a mere possibility of misconduct. Indeed, any conversation between the Zarco Firm and Bruno was permitted under

Rule 8.4. *See* Model Rules of Pro. Conduct 8.4 cmt. 1. (Rule 8.4 "does not prohibit a lawyer from advising a client concerning action the client is legally entitled to take."). Because there is no evidence that the Zarco Firm violated or attempted to violate Rule 4.2, even indirectly through Bruno, there can be no violation of Rule 8.4. As such, Mullett's Motion to Disqualify should be denied.

      **B.**      **The Zarco Firm Did Not Violate Rule 3.7**.

Mullett argues that the Zarco Firm "should further be disqualified as counsel in this matter because its own conduct has made it a necessary witness." *See* Motion to Disqualify, pp. 15-16. Other than conjecture on Mullett's part, there is no evidence that the Zarco Firm has any testimony whatsoever concerning any controversial or contested matter as framed by G Six's Complaint. Mullett's position is without merit. Indeed, disqualification under Rule 3.7 is appropriate only when counsel's testimony is both necessary and concerns a material, contested issue that cannot be proven through other means. *See Johnson & Johnson v. Advanced Inventory Mgmt., Inc.*, 20-CV-3471, 2020 WL 6119516 at *8 (N.D. Ill. Oct. 16, 2020) ("For a lawyer to be disqualified under Rule 3.7 as a necessary witness, it must be likely that the lawyer will be called upon to provide testimony that is relevant and material.")

Here, G Six has no intention or need to ever call its lawyers as witnesses in this case. However, even if he needed to do so, the mere fact that a lawyer serves as both an advocate and a witness does not in itself compel disqualification. *See alfaCTP Sys., Inc. v. Nierman*, 15-CV-9338, 2016 WL 687281 at *6 (N.D. Ill. Feb. 19, 2016) ("Even if [the attorney's] testimony can be deemed to be necessary at trial, ABA Model Rule 3.7 does not empower this court to disqualify him" before proof or testimony is offered); *see also* Model Rules of Pro. Conduct 3.7(a)(3) (stating that an attorney may act as an advocate at trial even if he is likely to be a necessary witness if

disqualification would impose substantial hardship on the client). Disqualification of defense counsel is not taken lightly, especially when the same evidence might have been available through alternate sources or have limited probative value. *See United States v. Turner*, 651 F.3d 743, 750 (7th Cir. 2011); *see also Walton v. Diamond*, 2012 WL 6587723 at *2 (N.D. Ill. Dec. 14, 2012) (holding that a necessary witness under Rule 3.7 is one whose testimony is unobtainable elsewhere).

Without these limitations, motions to disqualify can be misused as techniques of harassment. *See Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 722 (7th Cir. 1982). Courts "must be concerned about the possibility that the motion to disqualify is an abusive tactic to hurt the opponent's ability to pursue his case." *See Johnson & Johnson v. Advanced Inventory Mgmt., Inc.*, 20-CV-3471, 2020 WL 6119516 at *8 (N.D. Ill. Oct. 16, 2020).

Here, Mullett alleges that Mr. Zarco's statements to the press regarding the percentage of Dickey's stores closing somehow make him a fact witness. Any relevant data regarding store closures, profitability, or systemwide issues can be obtained through objective sources such as Dickey's own business records, public financials, franchise disclosure documents (FDDs), or third-party testimony from current or former franchisees. No testimony from Mr. Zarco is necessary or needed to determine Dickey's astronomical closure rate, as reflected in its own FDDs, and the ongoing investigation by the Federal Trade Commission regarding Dickey's fraudulent practices. Notwithstanding same, there is no direct connection between Mr. Zarco's public comments and any material, contested issue reflected in G Six's Complaint. Simply put, Mr. Zarco's testimony is not needed to establish any material fact in this matter.

Instead, Mullett is grasping at straws in suggesting that Mr. Zarco is a necessary fact witness to testify regarding an alleged "negative publicity campaign" that shows an "improper

motive for the filing of this lawsuit." *See* Motion to Disqualify, p. 15. Through its instant Motion to Disqualify, Mullett simply seeks to divert attention away from the merits of this case by advancing baseless allegations against the attorneys at the Zarco Firm in a desperate attempt to prevent the Zarco Firm from exposing Dickey's, as well as Mullett's, fraudulent business activities. This is the exact kind of behavior that courts condemn when ruling on a motion to disqualify. As such, disqualification under Rule 3.7 is completely unwarranted in this matter.

      **C.**      **Disqualification Is an Inappropriate Remedy**.

Courts have said that disqualification is a "drastic measure which courts should hesitate to impose except when absolutely necessary." *See Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir. 1983). In addition to creating unnecessary delay, disqualification often deprives a party of its chosen legal advisor. *See Moore v. Club Exploria, LLC*, 19-CV-2504, 2021 WL 260227 at *8 (N.D. Ill. Jan. 26, 2021); *see also Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982). Motions to disqualify counsel should be viewed with extreme caution, as they can be misused as techniques of harassment. *See Freeman*, 689 F.2d at 722; *see also In re Leventhal*, 10 B 12257, 2012 WL 1067568 at *2 (Bankr. N.D. Ill. Mar. 22, 2012) (recognizing that the ability to deny the services of capable counsel is a potent weapon). There must be solid evidence to support the allegations in a motion to disqualify. *See Fematt v. Finnigan*, 11-CV-1530, 2012 WL 3308759 at *2 (N.D. Ill. Aug. 13, 2012). The possible appearance of impropriety is not strong enough to disqualify counsel. *See id*.

Here, Mullett seeks to disqualify the Zarco Firm based on its alleged violation of Rules 4.2, 8.4 and 3.7. Other than a phone conversation that Mullett surreptitiously recorded between Bruno and himself, Mullett has offered no evidence whatsoever that lawyers from the Zarco Firm knowingly assisted and/or induced Bruno to contact Mullett regarding the merits of any legal

proceeding or the Zarco Firm indirectly communicated with Mullet through Bruno. Absent any direct evidence and nothing more than mere speculation, disqualification is not an appropriate remedy. *See Fematt*, 2012 WL 3308759, at *2. As such, this Court should deny Mullett's Motion to Disqualify.

V. **CONCLUSION**

Based on the foregoing, Plaintiff, G Six Consulting, LLC, respectfully requests that the Court enter an Order: (i) denying Defendant Mullett's Motion to Disqualify Counsel; (ii) awarding Plaintiff its legal fees for being required to respond to this frivolous motion; and (ii) granting any other relief that the Court deems proper.

Respectfully submitted,

**ZARCO EINHORN SALKOWSKI, P.A**.
*Counsel for Plaintiff*
One Biscayne Tower
2 S. Biscayne Blvd., Suite 3400
Miami, Florida  33131
Telephone: (305) 374-5418
Telecopier: (305) 374-5428

By: /s/ *Himanshu M. Patel*
    ROBERT M. EINHORN
    Florida Bar No. 858188
    E-mail: reinhorn@zarcolaw.com
    HIMANSHU M. PATEL
    Florida Bar No. 0167223
    E-mail: hpatel@zarcolaw.com
*and*

**MARCUS & BOXERMAN**
*Local Counsel for Plaintiff*
20 N. Clark Street, Ste. 3300
Chicago, Illinois 60602
Telephone: (312) 216-2720
**MICHAEL J. BOXERMAN**
Email: mboxerman@marcusboxerman.com
**MÍLE KNABE**
Email: mknabe@marcusboxerman.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 30, 2025, a true and correct copy of the foregoing was served on all counsel of record via the Court's E-filing Portal.

                By:   */s/ Himanshu M. Patel*
                            Himanshu M. Patel