IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| G SIX CONSULTING LLC, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 2025 CV 2166 |
| STEPHEN MULLETT, an individual, | ) Judge Sharon Johnson Coleman |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff G SIX CONSULTING LLC ("G SIX") brings this action to recover damages and other relief for Defendant Stephen Mullett's ("Mullett") alleged intentional dissemination of false and misleading build-out costs and sales projections for a franchise restaurant. Before the Court is Mullett's motion to dismiss G SIX's complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) [12]. Also before the Court is Mullett's motion to disqualify G SIX's retained legal counsel, Zarco Einhorn Salkowski, P.A. ("Zarco"), from representing G SIX in this action [38]. For the following reasons, the Court grants Mullet's motion to dismiss and denies Mullett's motion to disqualify Zarco as moot.

**I.      Background**

The following facts are accepted as true for the purpose of resolving the instant motion to dismiss. G SIX is a dissolved Illinois limited liability company that was incorporated in and based in Illinois. (Dkt. 1 ¶ 2.) Demetrius and Maria Gibson were the sole members of G SIX. (*Id.*)

Mullett is a citizen of Texas and was Senior Director of Finance and Real Estate Development of Dickey's Barbeque Restaurants, Inc. ("Dickey's"), a barbeque restaurant franchise headquartered in Dallas, Texas. (*Id.* ¶ 3.)

1

The Gibsons decided to look into an opportunity to own and operate a Dickey's restaurant in Schaumburg, Illinois. (*Id.* ¶ 15.) In September 2021, Dickey's gave Mr. Gibson a Franchise Disclosure Document ("FDD"), which contained an estimate of initial investment for a single Delivery-Carryout Restaurant ("DELCO") (one of Dickey's' four franchise models) and other material information concerning the franchise opportunity. (*See id.* ¶ 8, 16–18.) In direct reliance on the statements contained in the FDD, Mr. Gibson executed a franchise agreement (the "First Franchise Agreement"), dated October 6, 2021, with Dickey's for a DELCO in Schaumberg, Illinois (the "Restaurant"). (*Id.* ¶ 20.) On August 22, 2023, Mr. Gibson transferred and assigned the First Franchise Agreement to G SIX. (*Id.* ¶ 20 n.3.) G SIX alleges that the FDD contained material misstatements and that Mullett was aware of those misstatements. (*Id.* ¶ 19.)

To help the Gibsons obtain financing for a DELCO, Mullett coordinated with a franchise loan broker at Franchise Capital Solutions. (*Id.* ¶ 21.) On January 5, 2022, Mullett gave G SIX a build-out estimate for a DELCO of almost $590,000—more than double the estimate that Dickey's had given Mr. Gibson in the FDD approximately four months prior. (*Id.* ¶¶ 17, 22.) To arrive at the new estimate, Mullett manipulated stale data from 2020. (*Id.* ¶ 22.) After learning that the Gibsons lacked the requisite funds to obtain a loan of over $500,000, Mullett reworked, and reduced, the initial investment estimate in efforts to help G SIX obtain financing. (*Id.* ¶ 25.) In the months that followed, Mullett created and provided to the Gibsons two new, reduced, initial investment estimates using old, stale data. (*Id.* ¶¶ 26–28.) G SIX did not end up building a DELCO.

In June and October 2022, Mullett provided two different estimated project costs for a "Traditional Restaurant" (another one of Dickey's' franchise models)—first in the amount of nearly $604,000, then "a more accurate budget" of $652,000. Neither figure was disclosed in the FDD. (*Id.* ¶¶ 29, 36.) To ensure that G SIX received financing, Mullett recommended two new lenders, one to whom he provided false financial information. (*Id.* ¶¶ 29, 37.) Mullett also provided the Gibsons with

2

three-year financial projections that he created using inflated revenues and understated costs, and which "included knowingly false claims that G SIX would generate over $250,000 in net profits in its first year and reach its break-even point in a little over 4 years." (*Id.* ¶¶ 29, 33, 37.)

G SIX ultimately built out and opened a "Traditional Restaurant" on April 21, 2023. (*Id.* ¶ 40.) G SIX closed the restaurant in August 2023, fewer than four months after it opened. (*Id.*)

On February 28, 2025, G SIX filed a four-count complaint against Mullett for fraudulent inducement (Count I), negligent misrepresentation (Count II), violation of the Illinois Franchise Disclosure Act, 815 ILCS 705/6 (Count III), and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et al.* (Count IV).

## II. Legal Standard

In deciding a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of making a prima facie case of the existence of personal jurisdiction over the defendant. *Felland v. Clifton*, 682 F.3d 665 (7th Cir. 2012); *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). Courts must take the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987).

## III. Discussion

Mullett argues that under the fiduciary shield doctrine, the Court lacks personal jurisdiction over him because his only connection with the State of Illinois consists of acts performed entirely in the scope of his employment with his then-employer, Dickey's. G SIX responds that the fiduciary shield doctrine does not apply to Mullett because he exercised executive-level authority at Dickey's that was motivated by his own personal, financial interests.

Personal jurisdiction over a defendant can be either general or specific. *Tamburo v. Dworkin*, 601 F.3d 693, 701–02 (7th Cir. 2010). Plaintiff effectively concedes that this Court does not have

general jurisdiction over Mullett (Dkt. 26 at *3 n.1), so this Court's inquiry centers on whether there is specific jurisdiction. To determine whether specific jurisdiction exists, courts ask whether: "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in the state; (2) the alleged injury arises out of or relates to the defendant's forum-related activities; and (3) [the] exercise of personal jurisdiction . . . comport[s] with traditional notions of fair play and substantial justice." *Rogers v. City of Hobart*, 996 F.3d 812, 819 (7th Cir. 2021) (citation omitted).

Illinois recognizes the fiduciary shield doctrine, which "denies personal jurisdiction over an individual whose presence and activity in the state in which the suit is brought were solely on behalf of his employer or other principal." *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912 (7th Cir. 1994) (citing *Rollins v. Ellwood*, 565 N.E.2d 1302, 1313–18 (Ill. 1990)). Indeed, courts in this district have held that, where an individual employee's conduct "was a product of, and was motivated by, his employment situation and not his personal interests, . . . it would be unfair to use this conduct to assert personal jurisdiction over him as an individual." *United Fin. Mortg. Corp. v. Bayshores Funding Corp.*, 245 F. Supp. 2d 884, 894 (N.D. Ill. 2002) (St. Eve, J.) (quoting *Rollins*, 565 N.E.2d at 1318). "There are two important limitations to the shield: (1) the shield is removed if the individual's personal interests motivated his actions; and (2) the shield generally does not apply when the individual's actions are discretionary." *Jones v. Sabis Educ. Sys., Inc.*, 52 F. Supp. 2d 868, 883 (N.D. Ill. 1999) (Gettleman, J.) (internal citations omitted).

Here, G SIX alleges that Mullett's conduct falls within the exception to the fiduciary shield doctrine because he held a high-ranking position at Dickey's, had decision-making authority, and stood to benefit personally from his conduct.

The complaint is devoid of sufficient factual allegations that Mullett had the power to decide how to carry out his role at Dickey's or whether to conduct himself in a manner that would subject

4

him to jurisdiction in Illinois. It also lacks facts demonstrating that Mullett's actions were motivated by his own personal interests. G SIX alleges that Mullett (a) coordinated with lenders, and (b) sent to the Gibsons initial investment and project estimates that he had created by manipulating stale data, inflating revenues, and understating costs. But besides Mullett's title alluding to his senior position, the complaint contains no allegations showing that Mullett was a high-ranking officer that had discretion to decide whether to engage with the Gibsons at all or in the manner in which he did. *See Minkus v. Los Alamos Tech. Assocs.*, 2004 WL 1459499, at *3 (N.D. Ill. Jun. 28, 2004) (Andersen, J.) (holding fiduciary shield inapplicable where defendants, most of whom held ownership interest in their employer-corporations, were high-ranking officers).

Nor does the complaint contain any factual allegations that Mullett's conduct at issue was motivated by personal gain. The single reference to Mullett's alleged motivation appears in a footnote:

> Upon information and belief, Dickey's receives kickbacks for brokering deals on behalf of its franchisees. As such, Mullett was incentivized on behalf of his employer to broker a bad deal for G SIX knowing that if and when G SIX defaulted on its financial obligations, Dickey's would come right in and scoop up the Restaurant for pennies on the dollar and then turn around and sell it to the next naïve franchisee at a substantial profit.

(Dkt. 1 ¶ 40 n. 5.) In essence, G SIX presumes that Mullett had an incentive to "broker a bad deal" based on information and belief that Dickey's receives kickbacks. Even taking G SIX's allegations about kickbacks as true, the connection between kickbacks to Dickey's and Mullett's incentive to "broker bad deals" is far too attenuated. Even more tenuous is the presumption that Mullett's conduct was motivated by some personal interest. G SIX discusses Mullett's conduct in the context of having furthered the interest of *Dickey's*;[1] Mullett's personal

---

[1] *See, e.g., id.* ¶ 33 ("No doubt, Mullett fabricated the break-even number based on inflated revenues and understated costs in order to ensure that G SIX obtained financing, which, in turn, *directly benefited Dickey's . . .*") (emphasis added); *id.* ¶ 41 ("Mullett's 3-year sales projections were also false and misleading and were designed to *induce G SIX to continue to invest in the Dickey's concept* and ultimately open the Restaurant.") (emphasis added).

motivations (financial or otherwise) are simply not borne out in the complaint. And although G SIX claims in its opposition brief that Mullett "personally benefitted through salary, commissions, bonuses, and other incentives," (Dkt. 26 at *6), it is "axiomatic" that a complaint may not be amended by a brief in opposition to a motion to dismiss. *Schmees v. HC1.COM, Inc.*, 77 F.4th 483, 489 (7th Cir. 2023) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir. 1984)). In any event, to hold that an employee benefitted from carrying out his job responsibilities in exchange for the "personal benefit" of his regular salary would produce an absurd result and render the fiduciary shield doctrine null.

In sum, because Mullett's contacts with Illinois were made entirely within the scope of his employment with Dickey's, and were not made at his discretion or motivated by personal gain, the fiduciary shield doctrine bars this Court from asserting personal jurisdiction over Mullett.

**IV.    Conclusion**

For the foregoing reasons, the Court grants Mullet's motion to dismiss [12] and denies Mullett's motion to disqualify Zarco [38] as moot.

**IT IS SO ORDERED.**

_____
Sharon Johnson Coleman
United States District Judge

DATED: 9/2/2025

6